UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY JAKE BORNE,<br><br>                    Petitioner,<br><br>        vs.<br><br>DOUG CLARK[1], ACTING WARDEN;<br>JASON RAVNSBORG, THE ATTORNEY<br>GENERAL OF THE STATE OF SOUTH<br>DAKOTA; AND BRENT FLUKE,<br><br>                    Respondents. | 4:20-CV-04148-LLP<br><br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is pending before the court on the *pro se* habeas petition of Jeffrey Jake Borne, who is imprisoned pursuant to a state court judgment of conviction. See Docket No. 1; 28 U.S.C. § 2254. Respondents have moved for judgment on the pleadings, arguing that Mr. Borne's petition should be dismissed without holding an evidentiary hearing. See Docket No. 16. Mr. Borne has not responded to the motion and the time for doing so passed months ago. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier.

---

[1] Mr. Borne originally named Darin Young, former warden of the South Dakota State Penitentiary, as a respondent. Mr. Young has been separated from that office. According to FED. R. CIV. P. 25(d) the court substitutes Mr. Clark in his place.

**FACTS**

**A.    Direct Criminal Proceedings**

The facts which are relevant to the issues raised in respondents' motion are as follows.  Mr. Borne was charged in South Dakota state court for the Second Judicial Circuit, Minnehaha County, with two counts of distribution of a controlled substance and two counts of possession of a controlled substance occurring on September 24, 2015, and October 9, 2015.  See State v. Borne, CR 15-7403 at pp. 9-10.  These charges arose out of purchases of methamphetamine from Mr. Borne by a confidential informant ("CI").

Mr. Borne availed himself of his right to a trial by jury at which his defense was that he had given the CI money for some car rims, not for drugs. Mr. Borne testified in his own defense after the state trial court had warned him he would be subject to cross-examination by the prosecution concerning his several felony convictions.  Mr. Borne chose to testify despite this warning.

During direct examination with his own counsel, Mr. Borne testified correctly that he had five prior felony convictions:  three arising from the same date on September 11, 1998; one from July 31, 2006; and the last from September 13, 2007.  Id. at pp. 396-97 (Vol. II Jury Trial Transcript ("JT") at pp. 59-60).  On cross-examination by the prosecutor, Mr. Borne changed his testimony and asserted he had only three prior felony convictions.  Id. at pp. 398-99 (Vol. II JT at pp. 61-62).  The jury convicted Mr. Borne of all four counts.  Id. at p. 72 (Mar. 2, 2016, jury verdict).

2

Mr. Borne was sentenced on September 14, 2016.  The court imposed a sentence of five years' imprisonment on count 1 (with credit for 321 days time served), ten years' imprisonment with five years suspended on count 2 to be served consecutive to the sentence for count 1 and concurrent to the sentence for courts 3 and 4, two years' imprisonment for counts 3 and 4, both to be served concurrently to each other, but consecutive to another criminal case file, CR 06-1798.  Id. at pp. 82-83.

**B.    Direct Appeal**

Mr. Borne filed a direct appeal to the South Dakota Supreme Court, which affirmed his convictions and sentence on June 5, 2017.  State v. Borne, No. 28010 at pp. 77, 79 (S.D. June 5, 2017).  Appellate counsel filed a Korth[2] brief, indicating counsel could identify no nonfrivolous issues for appeal.  Id. at pp. 2-16.  Counsel also raised issues Mr. Borne wished to raise.  Id. at pp. 17, 22.  Those issues were:  (1) insufficiency of the evidence to support the jury's verdict and (2) violation of Mr. Borne's confrontation rights because the ATF[3] agent did not testify at trial.  Id.

---

[2] State v. Korth, 650 N.W.2d 528 (S.D. 2002).  Counsel files a Korth brief on appeal where a convicted defendant indicates he wishes to exercise his right to appeal, but counsel can find no colorable issues to raise in the appeal.  The defendant is allowed to raise his own issues in the appeal.

[3] Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  An ATF special agent was one of several investigating agents in Mr. Borne's case.

C.      **State Habeas Proceedings**

Thereafter Mr. Borne filed a habeas petition with the state courts alleging

the following grounds for relief allegedly due to counsel's rendering of

ineffective assistance:

1.      counsel failed to introduce favorable evidence at trial

2.      counsel violated the attorney-client privilege

3.      counsel refused to subpoena witnesses

4.      counsel did not allow Mr. Borne to help pick the jury

5.      counsel failed to object to false statements the prosecutor made
        about Mr. Borne's criminal history

6.      counsel failed to argue or speak about evidence that law
        enforcement or the prosecution withheld

Borne v. Fluke, Civ. 17-3541 at p. 1 (2d Jud. Cir. Dec. 20, 2016).

Counsel was appointed to represent Mr. Borne in his habeas action.

Counsel filed an amended habeas petition alleging the following grounds for

relief, also under the umbrella of ineffective assistance of counsel:

1.      counsel failed to familiarize himself with Mr. Borne's criminal
        record for the purpose of asking accurate questions on that topic

2.      counsel did not educate Mr. Borne about his own record

3.      counsel did not practice sufficient direct and cross-examination
        sessions with Mr. Borne prior to trial

4.      counsel did not object to any of the prosecutor's questions
        regarding Mr. Borne's record

5.      counsel did not ask for a longer recess in order to confer with
        Mr. Borne

6.      counsel did not move for a mistrial resulting from Mr. Borne's
        testimony

4

> 7.    counsel failed to call Nebyu, a witness identified by Mr. Borne as one who could substantiate that Mr. Borne was discussing exchanging car rims for cash with the CI

Id. at pp. 16-23, 35-43.

The state habeas court held an evidentiary hearing at which Mr. Borne's former trial counsel testified.  At the beginning of the hearing, Mr. Borne voluntarily dismissed all claims previously pleaded except the claim that counsel had been ineffective for handling Mr. Borne's criminal history at trial. Id. at pp. 97-98.  Evidence was received as to this issue.  The state habeas court issued a written decision denying Mr. Borne's request for habeas relief. Id. at pp. 97-102.

Trial counsel testified that he had met with Mr. Borne prior to trial, anticipating Mr. Borne may wish to testify.  Id. at p. 98.  To prepare him, counsel did a practice direct examination wherein he asked Mr. Borne about his three felony convictions from September 11, 1998.  Id.  At no time did Mr. Borne dispute that he had three convictions arising from the same date. Id.  At the jury trial, Mr. Borne answered in the affirmative when he was asked by counsel whether he had five felony convictions, three from September 1998, one from July 2006, and one from September 2007.  Id. at p. 99.

However, during cross-examination by the prosecution, Mr. Borne denied that he had three convictions from September 11, 1998, instead asserting he had one conviction on that date, totalling only three convictions overall.  Id. A break in the trial proceedings took place at this point and counsel admonished Mr. Borne about the possibility of perjury charges.  Id. at

pp. 99-100.  Despite this admonishment, after the break Mr. Borne persisted in testifying that he had only three prior felony convictions.  Id. at p. 100.  Trial counsel did not move for a mistrial based on Mr. Borne's answers to the prosecutor's cross-examination because he did not feel he had grounds for such a motion.  Id.

The state habeas court found that trial counsel's performance had not been deficient.  Id. at pp. 100-01.  The court concluded it was the state's evidence and the improbability of Mr. Borne's car-rims-for-cash defense that led to his conviction.  Id. at p. 101.  The court further found there was no basis for a motion for a mistrial.  Id.

Mr. Borne sought a certificate of probable cause from the state habeas court as to the issue "whether trial counsel's failure to prepare the Petitioner for cross-examination at trial regarding his prior record and failure to move for a mistrial constituted ineffective assistance of counsel where the Petitioner's inconsistent testimony could not conceivably lead to a finding that the jury viewed the inconsistencies in the Defendant's favor."  Id. at pp. 111-17.  The state habeas court denied the motion.  Id. at p. 120.

Mr. Borne then sought a certificate of probable cause from the South Dakota Supreme Court on the same issue.  The Supreme Court denied the motion.  Id. at p. 121.

**D.    Federal Habeas Petition**

Mr. Borne then timely[4] filed his instant habeas petition before this court pursuant to 28 U.S.C. § 2254.  See Docket No. 1.  In his federal habeas petition, Mr. Borne raises four grounds for relief all under the rubric of ineffective assistance of counsel:

1.    Counsel was ineffective regarding his questioning of Mr. Borne on his criminal record at trial and failure to request a mistrial after Mr. Borne's testimony on cross-examination.

2.    Counsel did not prepare or investigate adequately—he failed to cross-examine witnesses, he did not question Mr. Borne adequately in private to get a clear picture of the facts, he did not call two witnesses Mr. Borne asked him to call at trial, he did not familiarize himself sufficiently on Mr. Borne's criminal history.

3.    Counsel was ineffective for failing to request a mistrial after Mr. Borne's testimony on cross-examination and after ATF Agent Aalto failed to appear at trial as a witness—Mr. Borne had a right to confront Agent Aalto.

4.    Counsel was ineffective for failing to subpoena Mr. Borne's boss and a co-worker who could have corroborated the fact the CI and Mr. Borne had a conversation about buying car rims; counsel was ineffective for failing to subpoena Agent Aalto.

See Docket No. 1 at pp. 4-8

Respondents now move to dismiss Mr. Borne's petition on the pleadings without holding an evidentiary hearing.  Docket No. 16.  They argue Mr. Borne has procedurally defaulted all but one claim and that he cannot prevail on the merits on the one claim that has been properly exhausted at the state court level.  Id.  As noted above, Mr. Borne has not responded to this motion.

---

[4] This court previously determined Mr. Borne's instant habeas petition was timely and the district court agreed.  See Docket Nos. 9 & 14.

## DISCUSSION

### A.    Judgment on the Pleadings Standard

This court recently addressed the proper standard applicable to motions

for judgment on the pleadings under FED. R. CIV. P. 12(c):

> Courts deciding a Rule 12(c) motion are required to accept as true
> the well-pled allegations and must resolve all inferences in the
> non-moving parties' favor. Wishnatsky v. Rovner, 433 F.3d 608,
> 610 (8th Cir. 2006).  However, this tenet does not apply to legal
> conclusions, "formulaic recitation of the elements of a cause of
> action," or factual assertions which are so indeterminate as to
> require further factual enhancement. Braden v. Wal-Mart Stores,
> Inc., 588 F.3d 585, 594 (8th Cir. 2009). . . . When considering a
> motion for judgment on the pleadings, a court generally must
> ignore all materials outside the pleadings. Porous Media Corp. v.
> Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  However, courts
> may consider "some materials that are part of the public record or
> do not contradict the complaint . . . as well as materials that are
> necessarily embraced by the pleadings." Id.

Union Ins. Co. v. Scholz, 473 F. Supp. 3d 978, 982 (D.S.D. 2020) (Piersol, J.).

The main difference between a motion to dismiss under Rule 12(b)(6) asserting

plaintiff has failed to state a claim and a motion under Rule 12(c) is timing:  a

Rule 12(b)(6) motion must be made before an answer is filed while a Rule 12(c)

motion can be made after the pleadings have closed.  Id. at 981.

Here, in addition to the pleadings, the court has taken judicial notice of

the underlying criminal and habeas files in South Dakota state court

concerning Mr. Borne.  Cullen v. Pinholster, 563 U.S. 170, 181-82 (2011).

### B.    Scope of a § 2254 Petition

A state prisoner who believes he is incarcerated in violation of the

Constitution or laws of the United States may file a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  The Anti-Terrorism and Effective Death Penalty

Act (AEDPA) constrains federal courts to exercise only a "limited and deferential review of underlying state court decisions." Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06, (2000). A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly. Id. at 411. "Rather, that application must also be *unreasonable*." Id. (emphasis added).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met. Thatsaphone v. Weber, 137 F.3d 1041, 1045 (8th Cir. 1998); 28 U.S.C. § 2254(e). A federal habeas court must "more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair support' in the record." Marshall v. Lonberger, 459 U.S. 422, 432 (1983).

**C.    Mr. Borne's Unexhausted Procedurally Defaulted Claims**

**1.    State Court Exhaustion Requirement**

Respondents argue that Mr. Borne has only exhausted one claim before the state courts—the claim that counsel was ineffective for failing to familiarize himself with Mr. Borne's criminal history and to prepare Mr. Borne to testify about the same.  Respondents assert that all the other claims raised by Mr. Borne in his § 2254 petition are not exhausted and are now procedurally defaulted.

Federal habeas review of state court convictions is limited:

(b)(1) An application for a writ of habeas corpus on behalf of person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B)    (i) there is an absence of available State corrective process; or

           (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

    *        *        *

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

See 28 U.S.C. § 2254(b) and (c).  The above codifies what was previously a judicial doctrine of exhaustion.

A federal court may not consider a claim for relief in a habeas corpus petition if the petitioner has not exhausted his state remedies.  See 28 U.S.C.

§ 2254(b). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). If a ground for relief in the petitioner's claim makes factual or legal arguments that were not present in the petitioner's state claim, then the ground is not exhausted. Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991). The exhaustion doctrine protects the state courts' role in enforcing federal law and prevents the disruption of state judicial proceedings. Rose v. Lundy, 455 U.S. 509, 518 (1982). The Supreme Court has stated:

> Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

Rose, 455 U.S. at 518 (citation omitted), superseded by AEDPA as noted in Rhines v. Weber, 544 U.S. 269, 273 (2005). The exhaustion rule requires state prisoners to seek complete relief on all claims in state court prior to filing a writ of habeas corpus in federal court. Federal courts should, therefore, dismiss a petition for a writ of habeas corpus that contains claims that the petitioner did not exhaust at the state level. See 28 U.S.C. § 2254(b) & (c); Rose, 455 U.S. at 522. A petitioner's procedurally defaulted claims are barred from federal review unless there is a showing of either cause and prejudice or actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998).

11

A federal court must determine whether the petitioner fairly presented an issue to the state courts in a federal constitutional context.  <u>Satter v. Leapley</u>, 977 F.2d 1259, 1262 (8th Cir. 1992).  "To satisfy exhaustion requirements, a habeas petitioner who has, on direct appeal, raised a claim that is decided on its merits need not raise it again in a state post-conviction proceeding."  <u>Id.</u> (citation omitted).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  <u>O'Sullivan</u>, 526 U.S. at 845.  "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim."  <u>Ashker v. Leapley</u>, 5 F.3d 1178, 1179 (8th Cir. 1993) (citation omitted).

> **a.  Did Borne Present His Federal Habeas Corpus Claims to The State Courts?**

Fairly presenting a federal claim requires more than simply going through the state courts:

> The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

<u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971).  It is also not enough for the petitioner to assert facts necessary to support a federal claim or to assert a similar state-law claim.  <u>Ashker</u>, 5 F.3d at 1179.  The petitioner must present

both the factual and legal premises of the federal claims to the state court. Smittie v. Lockhart, 843 F.2d 295, 297 (8th Cir. 1988) (citation omitted).

"The petitioner must 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.' " Ashker, 5 F.3d at 1179 (quoting Kelly v. Trickey, 844 F.2d 557, 558 (8th Cir. 1988)).  This does not, however, require petitioner to cite "book and verse on the federal constitution." Picard, 404 U.S. at 278 (citing Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)).  The petitioner must simply make apparent the constitutional substance of the claim.  Satter, 977 F.2d at 1262.

Here, in order to exhaust an issue, Mr. Borne was required to either raise the issue on direct appeal, or raise the issue in his habeas case, then seek a certificate of probable cause on the issue before the circuit court, then seek a certificate of probable cause from the supreme court.  The only issue on which Mr. Borne completed exhaustion was the issue of whether counsel was ineffective with regard to the handling of Mr. Borne's criminal history—his preparation for trial on that issue, his presentation of Mr. Borne's testimony at trial, and his failure to move for a mistrial after Mr. Borne testified on cross-examination.  Mr. Borne did not exhaust any of the other issues raised in his § 2254 petition.

Although Mr. Borne raised many of the issues stated in grounds 2-4 of his § 2254 petition in his state habeas petitions, he voluntarily dismissed those issues prior to the evidentiary hearing.  Thus, the state habeas court never

ruled on those issues, and Mr. Borne did not seek a certificate of probable cause on those issues from either the circuit court or the supreme court. They are, accordingly, not exhausted.

A habeas petitioner can also exhaust by raising an issue in his direct appeal. Mr. Borne did argue in his direct appeal that his confrontation rights were violated when the ATF agent did not testify. But in his § 2254 petition, Mr. Borne does not raise a Confrontation Clause claim. Instead, he raises an ineffective assistance of counsel claim—he argues counsel was ineffective for failing to subpoena the ATF agent and for failing to move for a mistrial when the agent did not testify. That is a different claim than a claim that his Confrontation Clause rights were violated. This claim, too, is not exhausted.

### b.    Are There Available, Non-futile State Remedies?

The next question the court must analyze is whether it would serve any purpose to dismiss Mr. Borne's unexhausted claims without prejudice so that he can return to state court and present those claims to the state courts. Put another way, if the court did so order, are there any currently available non-futile state remedies for Mr. Borne? Unfortunately, the answer is "no."

South Dakota law provides as follows for second or successive state habeas petitions:

> A claim presented in a second or subsequent habeas corpus application under this chapter that was presented in a prior application under this chapter or otherwise to the courts of this state by the same applicant shall be dismissed.
>
> Before a second or subsequent application for a writ of habeas corpus may be filed, the applicant shall move in the circuit court of

14

appropriate jurisdiction for an order authorizing the applicant to
file the application.

The assigned judge shall enter an order denying leave to file a
second or successive application for a writ of habeas corpus
unless:

>   (1) The applicant identifies newly discovered evidence that, if
>   proven and viewed in light of the evidence as a whole, would
>   be sufficient to establish by clear and convincing evidence
>   that no reasonable fact finder would have found the
>   applicant guilty of the underlying offense; or
>
>   (2) The application raises a new rule of constitutional law,
>   made retroactive to cases on collateral review by the United
>   States Supreme Court and the South Dakota Supreme
>   Court, that was previously unavailable.  The grant or denial
>   of an authorization by the circuit court to file a second or
>   subsequent application shall not be appealable.

See SDCL § 21-27-5.1.

Here, the unexhausted claims contained in Mr. Borne' § 2254 petition
either *were* presented in his initial state habeas petition and then voluntarily
dismissed, or they *were not* presented but could have been because the facts
were known to Mr. Borne at the time he filed his state habeas petition.

Claims that initially were pleaded and then were voluntarily dismissed
are prohibited from being re-presented in a second or subsequent habeas
petition by the first paragraph of SDCL § 21-27-5.1.  These claims include the
assertion that Mr. Borne's trial counsel failed to call two witnesses at trial that
Mr. Borne requested be called.

Claims that were not presented but could have been are prohibited from
being presented in a second or subsequent petition by paragraph (1) of the last
full paragraph of SDCL § 21-27-5.1.  These include claims that trial counsel

15

was ineffective for failing to investigate sufficiently, failing to subpoena the ATF agent, and failing to move for a mistrial after the ATF agent did not testify. These facts were known to Mr. Borne as of the time he filed his direct appeal, so there is no reason he could not have presented them in his state habeas petition. The court concludes there is no non-futile remedy available to Mr. Borne to exhaust his unexhausted claims in state court. Under 28 U.S.C. § 2254(b)(1)(B)(i), then, Mr. Borne is not required to return to state court. But that does not mean that this court is now free to review the merits of his federal constitutional habeas claims. Instead, the court must analyze the application of the procedural default doctrine to Mr. Borne's case.

### 2.    Procedural Default

Closely related to the doctrine of state court exhaustion is the doctrine of procedural default. Both doctrines are animated by the same principals of comity—that is, in our dual system of government, federal courts should defer action on habeas matters before them when to act on those petitions would undermine the state courts' authority, which have equal obligations to uphold the constitution. See Coleman v. Thompson, 501 U.S. 722, 731 (1991) (quoting Rose, 455 U.S. at 518), overruled in part on other grounds by Martinez v. Ryan, 566 U.S. 1 (2012),[5] superseded in part on other grounds by statute as

---

[5] The Martinez decision modified that part of the Coleman decision involving whether ineffective assistance of habeas counsel can constitute "cause" excusing a procedural default. See Martinez v. Ryan, 566 U.S. 1, 9 (2012) (holding that, where state law required that ineffective assistance of counsel claims may not be raised until habeas proceedings, ineffectiveness of habeas counsel may supply "cause" sufficient to excuse a procedural default).

recognized in <u>Duncan v. Atchison</u>, No. 12 C 10362, 2014 WL 4062737, at *8 (N.D. Ill. Aug. 13, 2014). If a petitioner has failed to exhaust administrative remedies, and further non-futile remedies are still available to him in state court, then the federal court dismisses the federal petition without prejudice, allowing the petitioner to exhaust his state court remedies. <u>Carmichael v. White</u>, 163 F.3d 1044, 1045 (8th Cir. 1998). Where the petitioner has no further state remedies available to him, analysis of the procedural default doctrine is the next step.

Procedural default is sometimes called the "adequate and independent state grounds" doctrine. A federal habeas petitioner who has defaulted his federal claims in state court by failing to meet the state's procedural rules for presenting those claims, has committed "procedural default." <u>Coleman</u>, 501 U.S. at 731-32, 735 n.1. If federal courts allowed such claims to be heard in federal court, they would be allowing habeas petitioners to perform an "end run" around state procedural rules. <u>Id.</u> However, where no further non-futile remedy exists in state court, it is not feasible to require the petitioner to return to state court as would be the case in a dismissal for failure to exhaust state remedies.

In the <u>Coleman</u> case, the habeas petitioner, Coleman, had defaulted all of his federal claims by filing his notice of appeal from the state trial court three days late. <u>Coleman</u>, 501 U.S. at 727-28, 749. The state appellate court then refused to hear Coleman's appeal on the basis of his late-filing of his notice of appeal. <u>Id.</u> at 740. The Court held "[i]n all cases in which a state prisoner has

17

defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[6] Id. at 750. See also Ruiz v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995) ("A district court need not consider the merits of a procedurally defaulted claim.") (citation omitted).

"A state procedural default bars federal habeas review unless the petitioner can demonstrate cause for the default *and* actual prejudice as a result of the alleged violation of federal law." Maynard v. Lockhart, 981 F.2d 981, 984 (8th Cir. 1992) (quotation omitted, emphasis added). If no "cause" is found, the court need not consider whether actual prejudice occurred. Id. at 985; Wyldes v. Hundley, 69 F.3d 247, 253 (8th Cir. 1995) (citations omitted).

"The requirement of cause . . . is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief . . . ." Cornman v. Armontrout, 959 F.2d 727, 729 (8th Cir. 1992). The habeas petitioner must show that "some

---

[6] To fit within the fundamental miscarriage of justice exception, the petitioner must make a showing of actual innocence. Schlup v. Delo, 513 U.S. 298, 321, (1995), superseded on other grounds by statute as stated in Rivas v. Fischer, 687 F.3d 514, 541 n.36 (2d Cir. 2012). A successful claim of actual innocence requires the petitioner to support his allegations with new, reliable evidence. Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997). Mr. Borne does not invoke the fundamental-miscarriage-of-justice exception, so the court does not analyze that issue.

objective factor *external to* [*petitioner*] impeded [his] efforts." Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis added).

A petitioner may show cause by demonstrating that the factual or legal basis for a claim was not reasonably available to the petitioner at the time or that there was interference by officials which prevented the petitioner from exhausting his state remedies. Murray, 477 U.S. at 488. A petitioner's lay status, *pro se* status, and lack of education are not sufficient cause to excuse a procedural lapse in failing to pursue state court remedies. See Stewart v. Nix, 31 F.3d 741, 743 (8th Cir. 1994); Smittie, 843 F.2d at 298. Illiteracy or low intelligence are also not enough to demonstrate cause. See Criswell v. United States, 108 F.3d 1381, *1 (8th Cir. 1997) (unpub'd.); Cornman, 959 F.2d at 729. Finally, neither is ignorance of the law. Maxie v. Webster, No. 91-3292, 1992 WL 302247, at *1, 978 F.2d 1264 (table) (8th Cir. Oct. 26, 1992).

It is Mr. Borne's burden to demonstrate cause and prejudice. Maynard, 981 F.2d at 984. By not responding at all to respondents' motion to dismiss, Mr. Borne fails to carry his burden to demonstrate cause and prejudice. Accordingly, this court recommends dismissing all of Mr. Borne's claims that are unexhausted. This dismissal should be *with* prejudice. Armstrong v. Iowa, 418 F.3d 924, 925, 927 (8th Cir. 2005) (dismissal on the basis of procedural default is a dismissal with prejudice); Ogle v. Johnson, 488 F.3d 1364, 1370 (11th Cir. 2007) (same).

**D.    Mr. Borne's One Exhausted Claim**

Mr. Borne did properly present one claim to the state courts and follow through by presenting the claim to the state's highest appellate court.  That claim is whether trial counsel rendered ineffective assistance of counsel in the handling of the presentation of Mr. Borne's criminal history.

**1.    Standard Governing Ineffective Assistance Claims**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so

> serious that counsel was not functioning as the 'counsel'
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction or death sentence resulted from
> a breakdown in the adversary process that renders the result
> unreliable.

Id.

"There is a presumption that any challenged action was sound trial

strategy and that counsel rendered adequate assistance and made all

significant decisions in the exercise of professional judgment."  Hall v.

Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted).  It is the

petitioner's burden to overcome this presumption, and a "petitioner cannot

build a showing of prejudice on a series of errors, none of which would by itself

meet the prejudice test."  Id.  Counsel's conduct must be judged by the

standards for legal representation which existed at the time of the

representation, not by standards promulgated after the representation.  Bobby

v. Van Hook, 558 U.S. 4, 7-9 (2009).  American Bar Association standards and

similar directives to lawyers are only guides as to what reasonableness of

counsel's conduct is; they are not its definitive definition.  Id.

The Supreme Court distinguishes between those cases in which the new

evidence "would barely have altered the sentencing profile presented to the

sentencing judge," and those that would have had a reasonable probability of

changing the result.  Porter v. McCollum, 558 U.S. 30, 41 (2009).  In assessing

the prejudice prong, it is important for courts to consider "the totality of the

available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation." Id. at 40-41 (internal quotation omitted, cleaned up). It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quoting Strickland, 466 U.S. at 693-94).

Finally, "[i]neffectiveness of counsel is a mixed question of law and fact and thus on habeas review a federal court is not bound by a state court's conclusion that counsel was effective." Whitehead v. Dormire, 340 F.3d 532, 537 (8th Cir. 2003). "However, 'state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d).'" Id. (citing Strickland, 466 U.S. at 698). That is, "[a] state court's findings of fact are entitled to a presumption of correctness." Miller v. Dormire, 310 F.3d 600, 603 (8th Cir. 2002). Additionally, judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

Where a claim of ineffective assistance of counsel is made in a § 2254 petition, the already deferential standard of review of counsel's conduct is paired with the extremely deferential standard of review applicable to federal court review of a state court's rejection of a habeas claim to make the federal court's "highly deferential" review "doubly" so. Harrington v. Richter, 562 U.S.

22

86, 105 (2011). "Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d)." <u>Id.</u> The inquiry when a <u>Strickland</u> claim is raised in a § 2254 petition is "whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u>

### 2. State Habeas Court's Decision

Prior to trial, counsel filed a motion *in limine* concerning Mr. Borne's prior criminal convictions. <u>State v. Borne</u>, CR 15-7403 at pp. 136-37 (Vol. I JT at pp. 7-8). The court granted that motion, with the caveat that if Mr. Borne would testify, the prosecution would be allowed to cross-examine him about those convictions. <u>Id.</u> When it became apparent to counsel that Mr. Borne wanted to and would testify, counsel made the strategic decision to bring out the information about Mr. Borne's past convictions during his direct examination, instead of letting the jury hear about it as a surprise in cross-examination. <u>Borne v. Fluke</u>, Civ. 17-3541 at p. 98.

On February 23, 2016, counsel practiced a direct examination with Mr. Borne, including asking him about his past criminal convictions, in preparation for trial (which began March 1). <u>Id.</u> Counsel discussed Mr. Borne's criminal history with him on this occasion. <u>Id.</u> Counsel relied on an NCIC[7] criminal history report on Mr. Borne to determine what his prior convictions were. <u>Id.</u> That report showed Mr. Borne had three felony

---

[7] National Crime Information Center ("NCIC") is a central database maintained by the Federal Bureau of Investigation that tracks crime-related information.

convictions all occurring on September 11, 1998.  Id.  At no time during counsel's meeting with Mr. Borne did Mr. Borne dispute that he had three convictions arising out of September 11, 1998.  Id.

At trial, when Mr. Borne testified, counsel asked Mr. Borne whether he had five convictions:  three from September 11, 1998; one from July 31, 2006; and one from September 13, 2007.  Id. at p. 99.  Counsel based his question to Mr. Borne on the NCIC report he had obtained as well as his pre-trial meeting and practice session with Mr. Borne.  Id.  Mr. Borne responded affirmatively. Id.  Mr. Borne testified he pleaded guilty in these five prior cases because he *was* guilty, but he was availing himself of his right to a trial in the instant case because he was innocent.  Id.

On cross-examination, the prosecution asked Mr. Borne if he was a five-time felon.  Id.  Mr. Borne denied that he was and asserted he had only been convicted of three felonies.  Id.  A discussion was held off the record at this point in the trial.  Id.  Counsel admonished Mr. Borne about the possibility of facing perjury charges if he persisted in his testimony about the number of convictions he had.  Id.  But after the trial resumed, Mr. Borne persisted in his testimony that he had only one conviction from September 11, 1998, which he stated he had forgotten about due to the passage of time.  Id. at p. 100. Counsel did not move for a mistrial following Mr. Borne's testimony on cross-examination because he did not believe he had grounds to do so.  Id.

After trial but before sentencing, counsel consulted another source of information—PACER—about Mr. Borne's criminal convictions.  Id.  PACER also

indicated Mr. Borne had five prior felony convictions, three stemming from September 11, 1998, all of which were given concurrent terms of imprisonment.  Id.

The state habeas court found as a matter of fact that Mr. Borne indeed had five prior felony convictions at the time of his trial in the underlying matter.  Id.  Therefore, counsel was not misinformed or misguided or deficient when questioning Mr. Borne.  Id.  Furthermore, the state habeas court found as a matter of fact that there was nothing in counsel's discussions with Mr. Borne prior to trial that would have indicated Mr. Borne disputed his settled criminal record in any way.  Id.

The state habeas court applied the Strickland standard above and determined that counsel's representation of Mr. Borne was not deficient.  Id.  In addition, the court concluded Mr. Borne had not demonstrated prejudice.  Id. at pp. 100-01.  The court concluded Mr. Borne's belief that he only had one conviction stemming from September 11, 1998, sounded credible and probably helped rather than harmed him.  Id. at p. 101.  The court concluded the state's evidence and the improbability of Mr. Borne's cash-for-car-rims defense were the factors that resulted in his conviction.  Finally, the court concluded as a matter of law that no grounds for a mistrial existed, so counsel was not deficient in failing to move for a mistrial.  Id.

### 3.    Analysis of the State Court's Decision

This court must evaluate whether the state court's application of federal law was reasonable and whether that court's findings of fact enjoy reasonable support in the record.  This court concludes in the affirmative on both issues.

First, the court recognized the controlling federal constitutional law as embodied in the <u>Strickland</u> decision and applied it correctly.  It was a matter of trial strategy to "front" the evidence about Mr. Borne's criminal convictions in direct examination rather than allow the prosecutor to bring the information out in the first instance during cross-examination.  Tactical decisions of trial strategy are given wide deference.  Mr. Borne never argues it was error for his counsel to introduce this information in direct examination.

Second, the court's factual findings are well supported in the record.  Counsel testified both NCIC and PACER indicated Mr. Borne in fact had five prior felony convictions at the time of his trial, three of which stemmed from September 11, 1998.  The state habeas court found as a matter of fact that the NCIC and PACER records were accurate.  Since counsel was correct in surmising that Mr. Borne had five prior convictions, counsel had no basis to move for a mistrial after Mr. Borne so testified in the affirmative.  Nor was counsel deficient in investigating or preparing Mr. Borne to testify—counsel obtained reliable information prior to trial about Mr. Borne's prior convictions and went over that information with Mr. Borne before the trial.  At no time did Mr. Borne tell counsel he believed the information was inaccurate.

When the court has determined that counsel's representation was not deficient, the court need not address the prejudice prong of the <u>Strickland</u> test. <u>Strickland</u>, 466 U.S. at 697.  Here, applying the "double deference" due under both <u>Strickland</u> and § 2254, the court concludes the state habeas court's decision was well founded both in fact and in law.  Accordingly, the court recommends Mr. Borne's exhausted claim of ineffective assistance be dismissed with prejudice.

## CONCLUSION

Based on the foregoing facts, law and evidence, this magistrate judge respectfully recommends granting respondents' motion for judgment on the pleadings [Docket No. 16] and dismissing Mr. Borne's § 2254 petition with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the

district court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED July 30, 2021.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge